United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOLL BROTHERS, INC., | Case No. 08-987 SC |
| Plaintiff, | ORDER DENYING PLAINTIFF AND COUNTER-DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| CHANG SU-O LIN; HONG LIEN LIN; HONG YAO LIN, | |
| Defendants. | |
| AND RELATED COUNTER-CLAIMS. | |

**I.  INTRODUCTION**

This matter comes before the Court on Plaintiff and Counter-Defendant Toll Brothers, Inc.'s Motion for Judgment on the Pleadings ("Motion").  Docket No. 46.  Defendants and Counter-Claimants Chang Su-O Lin, Hong Lien Lin, and Hong Yao Lin (the "Lins") filed an Opposition and Toll Brothers, Inc. ("Toll") submitted a Reply.  Docket Nos. 54, 65.  For the reasons stated herein, the Plaintiff's Motion is DENIED.

**II.  BACKGROUND**

The following facts are taken from Defendants' Answer to Second Amended Complaint and Counter-Claim Against Counter-Defendants ("Answer"), Docket No. 40, unless otherwise noted.  On May 27, 2004, Toll and the Lins entered into a written contract for the purchase and sale of approximately 147 acres of real

1  estate located in Alameda County, California. The purchase price
2  was $241,500,000. Toll was required to make a deposit of
3  $21,735,000. Second Amended Complaint, Docket No. 39, Exhibit A
4  ("Agreement") § 2.2. Toll was to acquire the land in three
5  stages, and the deposit was to be credited as follows: $7,000,000
6  at the closing of Sub-Area 1; $7,000,000 at the closing of Sub-
7  Area 2; and $7,735,000 at the closing of Sub-Area 3. Id.
8  § 2.2(c).

9  The scheduled date of the first closing was September 30,
10 2005.[1] Id. § 5.1. Escrow closed on Sub-Area 1. The scheduled
11 date of the second closing was June 30, 2006. Id. § 5.2. In July
12 2006, Toll assigned its rights under the Agreement relating to
13 Sub-Area 2 to a third party, Regent Land Investment LLC
14 ("Regent"), and escrow closed on Sub-Area 2. The scheduled date
15 of the third closing was June 30, 2007. Id. § 5.3. The third
16 closing never occurred. At the time of the third closing,
17 $7,735,000 of the deposit remained. Toll gave the Lins notice of
18 its termination and/or rescission of the contract on December 7,
19 2007. Toll filed the present suit seeking, among other things,
20 rescission of the Agreement, a declaration that the Agreement is
21 illegal and void, and restitution of the deposit of $7,735,000.

## III. **LEGAL STANDARD**

"After the pleadings are closed - but early enough not to

---

[1] The Agreement contains a typographical error stating that September 30, 2005, is the scheduled closing date of the second closing.

2

delay trial - a party may move for judgement on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990). Plaintiff is not entitled to judgment on the pleadings if the answer raises issues of fact or an affirmative defense which, if proved, would defeat plaintiff's recovery. Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).

**IV. DISCUSSION**

Toll's Motion raises three issues. First, Toll argues that the Agreement is illegal and void under California's Subdivision Map Act ("SMA"), Cal. Gov. Code § 66410, et seq. Second, Toll argues that the pleadings establish that Toll's assignment of Sub-Area 2 to Regent did not breach the Agreement. Finally, Toll argues that the Lins' intentional and negligent misrepresentation counter-claims should be dismissed because a breach of contract cannot be transformed into a tort. The Court addresses each issue in turn.

**A. The SMA and the Agreement**

Toll argues that the Agreement violates the SMA, and that the Court should therefore enter judgment in Toll's favor on the fifth cause of action in the Second Amended Complaint, on Toll's fifth and seventh affirmative defenses to the Lins' Counter-Claim, and

1  on the Lins' first, second, third, fourth, fifth, sixth, and
2  eighth counter-claims.  Section 66499.30(b) of the Subdivision Map
3  Act ("SMA") provides that:

4        No person shall sell, lease or finance any
         parcel or parcels of real property or commence
5        construction of any building for sale, lease
         or financing thereon, except for model homes,
6        or allow occupancy thereof, for which a parcel
         map is required by this division or local
7        ordinance, until the parcel map thereof in
         full compliance with this division and any
8        local ordinance has been filed for record by
         the recorder of the county in which any
9        portion of the subdivision is located.

10 Cal. Gov. Code § 66499.30(b).  The SMA contains a limited
11 exception to this prohibition for contracts that are "expressly
12 conditioned upon the approval and filing of a final subdivision
13 map or parcel map, as required under this division."  Id.
14 § 66499.30(e).

15    Toll argues that the Agreement is illegal and void because it
16 is not "expressly conditioned" upon the recording of a map since
17 it allows the recording to be waived.  Mot. at 8-9.  Section 5.5
18 of the Agreement outlines the Buyer's Closing Conditions.  One of
19 these conditions is that "Seller shall have caused the Map (or
20 Maps) to be recorded."  Agreement § 5.5(d).  The Agreement states
21 that "if any Buyer's Closing Conditions remain unsatisfied as of
22 the date then established as the Closing Date, Buyer shall have
23 the right, in its sole and absolute discretion, to (1) waive one
24 or more of Buyer's Closing Conditions and proceed with the
25 Closing."  Id. § 5.5(h).

26    However, in a different section of the Agreement, entitled
27 "Parcel Map to Create Legal Parcel," it states:

28

4

> The entirety of the Property is not currently subdivided in a manner that would permit its conveyance in the contemplated Sub-Areas. Seller shall, at its sole cost and expense, cause the City to record a parcel map or other map or maps (the "*Map*") in order to create the Property as legal parcels that can be conveyed consistent with the requirements of the Subdivision Map Act and the City's Subdivision Ordinance.

Id. § 3.2. This section of the Agreement is not part of the section entitled "Buyer's Closing Conditions." The Agreement is ambiguous as to whether the Buyer's ability to waive the Buyer's Closing Conditions in Section 5.5 of the Agreement gives Toll the right to waive the Lins' obligation to cause the City to record a parcel map as required by Section 3.2.

Toll relies on Black Hills Investments, Inc. v. Albertson's, Inc., 146 Cal. App. 4th 883 (2007). However, the present facts are distinguishable. In Black Hills, the California Court of Appeal affirmed the finding that two contracts did not comply with the SMA because the seller could waive the seller's obligation to obtain and record a parcel map. Id. at 893. In the present case, Toll's Agreement with the Lins permits the buyer to waive the condition requiring the seller to record a parcel map, which would seem to further one of the purposes of the SMA; namely, its goal of protecting individual real estate buyers. See id. at 889-90, 892.

Since there is an issue as to whether the Agreement gives Toll the right to waive the Lins' requirement to cause the City to record a parcel map, the Court denies Toll's Motion with respect to the fifth cause of action in the Second Amended Complaint, the

fifth and seventh affirmative defenses to the Lins' Counter-Claim, and the Lins' first, second, third, fourth, fifth, sixth and eighth counter-claims.

### B. Toll's Assignment of Sub-Area 2 to Regent

Toll seeks judgment on the pleadings that its assignment of Sub-Area 2 to Regent did not breach the Agreement. The Agreement provides that:

> Neither Buyer nor Seller shall assign all or any portion of its interest in this Agreement without the prior written consent of the other (which consent shall not be unreasonably withheld); provided, however, that (so long as Buyer and Seller remain liable for the performance of it's [sic] obligations under the terms of this agreement) either Buyer or Seller shall have the right to assign this Agreement in whole or in part without the other's consent to : (i) any affiliate of Buyer or Seller; (ii) any entity in which Buyer or Seller or such affiliate hold as least a 50% interest; or (iii) as to Buyer, to any entity that serves as a 'land banker' for Buyer, and any such assignee shall have the same right to assign with respect to its interest in this Agreement.

Agreement § 18.7.

Toll argues that the Lins' Counter-Claim shows that the Lins consented to the assignment to Regent. Mot. at 11. The Lins allege that Toll assured them that Toll would continue to develop the property despite the assignment to Regent as a "land banker."[2] Answer at 22. The Lins allege that despite disguising the assignment as a "land banker" transaction, the assignment was a general assignment of Toll's rights under the contract, and that

---

[2] Neither party precisely defines what it means for Regent to serve as a "land banker" for Toll, but a precise definition is not required in order for the Court to rule on the motion.

6

Toll contends it no longer remains liable for performance of its obligations under the contract. Id. at 22-23. Accepting as true for purposes of this motion the Lins' allegation that Regent did not serve as a land banker for Toll, then Toll was required to obtain the Lins' prior written consent. See Agreement § 18.7. Since there are issues of fact as to whether Regent served as a land banker for Toll and whether Toll obtained the Lins' prior written consent to the assignment, the Court denies Toll's Motion with respect to the Lins' fourth counter-claim.

### C. Intentional and Negligent Misrepresentation Counter-Claims

Toll seeks judgment on the pleadings on the Lins' fifth and sixth counter-claims, arguing that Toll's alleged misrepresentations cannot serve as a predicate for fraud and negligent misrepresentation claims. Mot. at 12. The Lins allege that at the time of the assignment to Regent, Toll did not intend to remain liable for the performance of its obligations under the Agreement. Answer at 24. The Lins allege that Toll misrepresented that Regent would serve as a mere passive land banker, that Toll rather than Regent would continue to develop the property, and that the Lins relied on these misrepresentations to their detriment. Id. at 21-25.

Toll argues that even if true, such misrepresentations cannot serve as the basis for fraud and negligent misrepresentation claims. Mot. at 12. Toll relies on Hunter v. Up-Right, Inc., 6 Cal. 4th 1174 (1993). In this wrongful termination case, an

7

employer misrepresented that the employee's position was being eliminated in order to induce the employee to resign. Id. at 1179. The jury found a breach of the implied contract not to terminate employment without good cause, breach of the implied covenant of good faith and fair dealing, and fraud. Id. at 1180. On appeal, the California Supreme Court held that a misrepresentation aimed at termination of employment does not give rise to an independent fraud claim. Id. at 1185. The California Supreme Court found the misrepresentation was merely the means to the end of the wrongful termination. Id.

The present case is distinguishable. With regard to the assignment to Regent for Sub-Area 2, the Lins allege that Toll misrepresented that Regent would merely serve as a passive land banker. Unlike the facts of Hunter, this alleged misrepresentation was not the means to a breach of contract because the Agreement allows the buyer to assign all or any portion of its interest in the Agreement so long as the buyer obtains the seller's prior written consent. See Agreement § 18.7. Accepting as true for purposes of this motion the Lins' allegation that Toll misrepresented Regent's status in order to induce the Lins to permit the assignment, the Lins' counter-claims for intentional and negligent misrepresentation should not be dismissed. The Court denies Toll's Motion with respect to the Lins' fifth and sixth counter-claims.

**V. CONCLUSION**

For the reasons stated above, the Court DENIES Plaintiff and

Counter-Defendant Toll Brothers, Inc.'s Motion for Judgment on the Pleadings.

    IT IS SO ORDERED.

    Dated: January 14, 2009

                                            UNITED STATES DISTRICT JUDGE