**United States District Court**
For the Northern District of California

1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7  TOLL BROTHERS, INC.,                    )  Case No. 08-987 SC
                                           )
8           Plaintiff,                     )  ORDER DENYING
                                           )  DEFENDANTS' MOTION
9      v.                                  )  FOR SUMMARY JUDGMENT
                                           )  OR, IN THE
10 CHANG SU-O LIN; HONG LIEN LIN; HONG)    ALTERNATIVE, PARTIAL
   YAO LIN,                                )  SUMMARY JUDGMENT
11                                         )
            Defendants.                    )
12 _____)
                                           )
13 AND RELATED CROSS-ACTION.               )
   _____)

14 **I.   INTRODUCTION**

15      This matter comes before the Court on Defendants' Motion for

16 Summary Judgment or, in the Alternative, Partial Summary Judgment

17 ("Motion").  Docket No. 66.  Plaintiff Toll Brothers, Inc.

18 ("Toll") filed an Opposition and Defendants Chang Su-O Lin, Hong

19 Lien Lin, and Hong Yao Lin (the "Lins") submitted a Reply.  Docket

20 Nos. 78, 86.  For the reasons stated herein, the Defendants'

21 Motion is DENIED.

22

23 **II.   BACKGROUND**

24      The following facts are not in dispute.  On May 27, 2004,

25 Toll and the Lins entered into a written contract for the purchase

26 and sale of approximately 147 acres of real estate located in

27

28

**United States District Court**
For the Northern District of California

1  Dublin, California.  Inderbitzen Decl. ¶¶ 4-5.[1]  The purchase

2  price was $241,500,000.  Id. Ex. A ("PSA") § 2.1.  Toll was

3  required to make a deposit of $21,735,000.  Id. § 2.2.  Toll was

4  to acquire the land in three stages, and the deposit was to be

5  credited as follows: $7,000,000 at the closing of Sub-Area 1;

6  $7,000,000 at the closing of Sub-Area 2; and $7,735,000 at the

7  closing of Sub-Area 3.  Id. § 2.2(c).

8       The scheduled date of the first closing was September 30,

9  2005.  Id. § 5.1.  Escrow closed on Sub-Area 1.  Inderbitzen Decl.

10  ¶ 10.  The scheduled date of the second closing was June 30, 2006.

11  PSA § 5.2.  On May 31, 2006, Toll notified the Lins that:

12          Toll wants to "assign" the Purchase Agreement
            with respect to Subarea 2 to Regent Land
13          Investment LLC.  This is a land banking
            transaction of the type referred to in the
14          Purchase Agreement's assignment clause . . .
            The reason this is not a real "assignment" of
15          the Purchase Agreement is that Toll is only
            designating a title holding nominee.  Because
16          Toll retains all the duties under the Purchase
            Agreement . . . it satisfies the requirements
17          of the assignment paragraph of the Purchase
            Agreement.
18

19  Inderbitzen Decl. Ex. C ("May 31, 2006 Email").  In response to

20  questions from the City of Dublin, Toll explained that:

21          Toll is entering into a Nomination Agreement
            and Construction Agreement by which Toll will
22          continue to seek entitlements and develop the
            infrastructure for Area F West as the
23          contractor/agent for Regent Land Investment. .
            . Toll will continue to work toward the
24          entitlement and development of the Property.

25  _____

26      [1] Martin Inderbitzen, attorney for Defendants, filed a
    declaration in support of Defendants' Motion ("Inderbitzen Decl.").
    Docket No. 67.  He also filed a supplemental declaration in support
27  of Defendants' Reply ("Inderbitzen Supp. Decl.").  Docket No. 87.

28                                  2

United States District Court
For the Northern District of California

1    Id. Ex. D ("June 26, 2006 Email").

2        Homebuilders enter into land banking transactions as a means

3    of retaining rights to acquire undeveloped real property without

4    having to reflect the acquisition of the property on their

5    financial statements.  Kalt Decl. ¶ 3.[2]  The land banker becomes

6    the owner of the property, but grants an option to the

7    homebuilder, so that the homebuilder can acquire the property when

8    it is ready to begin construction of residential units.  Id.  The

9    homebuilder typically performs infrastructure work on the property

10   pursuant to a construction agreement with the land banker.  Id.

11       The Lins did not object to the proposed assignment.

12   Inderbitzen Decl. ¶ 12.  Toll assigned all of its "right, title

13   and interest" under the PSA relating to Sub-Area 2 to Regent Land

14   Investment LLC ("Regent").  Austin Decl. Ex. A ("Nomination

15   Agreement") at 1.[3]  Toll and Regent entered into an option

16   agreement so that Toll could buy back Sub-Area 2, or parts of Sub-

17   Area 2, from Regent.  Id. Ex. B ("Option Agreement"), Ex. C

18   ("First Amendment to Option Agreement").  Toll and Regent entered

19   into a construction agreement, whereby Toll would act as Regent's

20   contractor and continue working on the property.  Id. Ex. D

21   ("Construction Agreement") at 3-4.  Regent took title to Sub-Area

22

23

24       [2] Scott Kalt, a real estate partner at Jeffer, Mangels, Butler
     & Marmaro LLP, filed a declaration in support of Plaintiff's
25   Opposition ("Kalt Decl.").  Docket No. 81.

26       [3] David Austin, an associate at McNichols Beers LLP, filed a
     declaration in support of Defendants' Motion ("Austin Decl.").
27   Docket No. 75.  The declaration was filed under seal.

28
                                   3

United States District Court
For the Northern District of California

1  2.  Request for Judicial Notice Ex. 1 ("Grant Deed").[4]  Escrow for

2  Sub-Area 2 closed on or about July 20, 2006.  Inderbitzen Decl. ¶

3  13; Inouye Decl. ¶ 7.[5]

4      The scheduled date of the third closing was June 30, 2007.

5  PSA § 5.3.  Between April and June 2007, disputes arose concerning

6  closing conditions, the construction of utility vaults and power

7  lines, and the recording of easements on Sub-Area 3.  Inderbitzen

8  Decl. ¶¶ 15-22; Inouye Decl. ¶¶ 9-17.  The third closing never

9  occurred.  Inderbitzen Decl. ¶ 23.  On December 7, 2007, Toll

10  notified the Lins that it was terminating and rescinding the

11  contract.  Id. Ex. R ("Notice of Termination").

12      Toll's Second Amended Complaint seeks (1) rescission of the

13  contract and restitution of the remaining deposit of $7,735,000;

14  (2) damages for breach of contract; (3) foreclosure of a

15  contractual lien against the property; (4) foreclosure of a

16  purchaser's lien against the property; and (5) a declaration that

17  the PSA is illegal under California's Subdivision Map Act ("SMA"),

18  Cal. Gov't Code § 66410 et seq.  See Docket No. 39.

19

20  **III.  LEGAL STANDARD**

21      Entry of summary judgment is proper "if the pleadings, the

22  _____

23      [4] The Lins request the Court to take judicial notice of a
    Grant Deed.  Docket No. 68.  The Grant Deed is a matter of public
    record, and it describes a fact not subject to reasonable dispute.
24  See Fed. R. Evid. 201; see also Neighbors v. Mortgage Elec.
    Registration Sys., Inc., No. 08-5530, 2009 WL 192445, at *3 (N.D.
25  Cal. Jan. 27, 2009).  The Court grants the request.

26      [5] Warren Inouye, an attorney for Plaintiff, filed a
    declaration in support of Plaintiff's Opposition ("Inouye Decl.").
27  Docket No. 80.

28
                                    4

**United States District Court**
For the Northern District of California

1  discovery and disclosure materials on file, and any affidavits

2  show that there is no genuine issue as to any material fact and

3  that the movant is entitled to judgment as a matter of law."  Fed.

4  R. Civ. P. 56(c).  The movant bears the initial burden of

5  demonstrating the absence of a genuine issue of fact.  See <u>Celotex</u>

6  <u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  To survive a motion

7  for summary judgment, the responding party must present competent

8  evidence that creates a genuine issue of material fact.  <u>See</u>

9  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-52 (1986).

10

11  **IV.   DISCUSSION**

12        The Lins contend that Toll's first, second, third, and fourth

13  causes of action fail as a matter of law because Toll was in

14  breach of the PSA by assigning its interest in Sub-Area 2 to

15  Regent.  Mot. at 12-16.  The Lins contend that Toll's fifth cause

16  of action fails as a matter of law because the PSA is valid,

17  legal, and enforceable under California's SMA.  <u>Id.</u> at 16-20.

18        **A.   The PSA's Provisions**

19             1.   <u>The Assignment Provision</u>

20        The Assignment paragraph of the PSA provides that:

21             Neither Buyer nor Seller shall assign all or
                any portion of its interest in this Agreement
22             without the prior written consent of the other
                (which consent shall not be unreasonably
23             withheld); provided, however, that (so long as
                Buyer and Seller remain liable for the
24             performance of it's [sic] obligations under
                the terms of this agreement) either Buyer or
25             Seller shall have the right to assign this
                Agreement in whole or in part without the
26             other's consent to: (i) any affiliate of Buyer
                or Seller; (ii) any entity in which Buyer or
27             Seller or such affiliate hold at least a 50%

28                                     5

**United States District Court**
For the Northern District of California

1
2
3

> interest; or (iii) as to Buyer, to any entity
> that serves as a "land banker" for Buyer, and
> any such assignee shall have the same right to
> assign with respect to its interest in this
> Agreement.

4   PSA § 18.7.

5                    2.    The School Site Provisions

6       In the section of the PSA that establishes "Special Closing

7   Conditions" for the Third Closing, it states that "Buyer shall

8   have reconveyed to Seller or Seller's assignees the elementary

9   school parcel in Sub-Area 2."  PSA § 5.3.2(g).  In the section of

10  the PSA entitled "Buyer's Work," it states that:

11
12
13
14

> Buyer shall acquire title to all of Sub-Area 2
> subject to the obligation to reconvey the
> school site to Seller, or Seller's assignee,
> without consideration and with no new title
> exceptions but otherwise without any
> representation, warranty or liability to
> Seller when Buyer has obtained a Parcel Map
> creating the school site as a legal parcel.

15
PSA § 7.5(b).[6]  The Lins included these provisions in the PSA
16
because they were parties to a Mitigation Agreement with the
17
Dublin Unified School District that allowed the Lins to offset
18
mitigation payments to the District by dedicating a ten-acre site
19
to the District.  Mot. at 7; Inderbitzen Decl. Ex. B ("Mitigation
20
Agreement") § 3.
21
                    3.    The Parcel Map Provisions
22
        Section 5.5 of the PSA outlines the Buyer's Closing
23
Conditions.  One of these conditions is that "Seller shall have
24
caused the Map (or Maps) to be recorded."  Agreement § 5.5(d).
25

26

27      [6] The same obligation to reconvey appears in section 13.13 of
the PSA, in the section entitled "Covenants."

28                                   6

**United States District Court**
For the Northern District of California

1  The PSA states that "if any Buyer's Closing Conditions remain

2  unsatisfied as of the date then established as the Closing Date,

3  Buyer shall have the right, in its sole and absolute discretion,

4  to (1) waive one or more of Buyer's Closing Conditions and proceed

5  with the Closing."  Id. § 5.5(h).

6       In the section of the PSA entitled "Parcel Map to Create

7  Legal Parcel," it states:

8               The entirety of the Property is not currently
                subdivided in a manner that would permit its
9               conveyance in the contemplated Sub-Areas.
                Seller shall, at its sole cost and expense,
10              cause the City to record a parcel map or other
                map or maps (the "*Map*") in order to create the
11              Property as legal parcels that can be conveyed
                consistent with the requirements of the
12              Subdivision Map Act and the City's Subdivision
                Ordinance.

13

14  Id. § 3.2.  This section of the PSA is not part of the section

15  entitled "Buyer's Closing Conditions."  In the section of the PSA

16  that establishes special closing conditions for each of the three

17  closings, it states that the entirety of each sub-area shall be

18  conveyed "pursuant to an Approved Map."  PSA §§ 5.1.2(a),

19  5.2.2(a), 5.3.2(a).

20       **B.    The Obligation to Reconvey the School Site Parcel**

21       The Lins contend that Toll's assignment to Regent breached

22  the PSA because, after the assignment, Toll was no longer able to

23  reconvey the ten-acre school site parcel to the Lins, as required

24  by section 5.3.2(g) of the PSA.  Mot. at 12.

25       Toll contends that the assignment did not breach the PSA

26  because after the assignment the obligation to reconvey the school

27  transferred to Regent.  Opp'n at 11.  While the Lins allege that

28                                    7

**United States District Court**
For the Northern District of California

1   Toll misrepresented that it would repurchase Sub-Area 2 from

2   Regent, neither party disputes that Regent obtained title to Sub-

3   Area 2 in July 2006.  <u>See</u> Inderbitzen Decl. ¶¶ 10, 12; Opp'n at

4   11.  Since Regent was the buyer of Sub-Area 2, it is entirely

5   consistent with the terms of the agreement to view sections

6   5.3.2(g), 7.5(b), and 13.13 of the PSA as imposing the obligation

7   to reconvey the school site on Regent, not Toll.  Furthermore, the

8   Mitigation Agreement between the Lins and the City of Dublin

9   indicates that the obligation to dedicate a school site parcel ran

10  with the land.  <u>See</u> Mitigation Agreement § 17(c).

11          Whether the parties understood the obligation to reconvey the

12  school site as belonging to Regent or Toll is a disputed factual

13  issue.  When the dispute arose between Toll and the Lins about the

14  closing conditions for Sub-Area 3, the Lins did not raise any

15  concerns about the obligation to reconvey the school site.  <u>See</u>

16  Opp'n at 7-9; Inouye Decl. ¶¶ 7-8.  Toll implies that if the Lins

17  viewed the obligation to reconvey the school site as belonging to

18  Toll, the matter would have been raised during that dispute.

19  Opp'n at 7-9.  Furthermore, since November 14, 2008, Regent has

20  been prepared to reconvey the school site parcel, but has received

21  no direction from the Lins on how to proceed.  Opp'n at 9; Hoban

22  Decl. ¶ 7.[7]  Regent has deposited a grant deed for the school site

23  into an escrow account.  Opp'n at 9; Inderbitzen Supp. Decl. ¶ 14.

24          In response, the Lins point out that they were engaged in

25

26          [7] Timothy Hoban, regional counsel for Toll, filed a
    declaration in support of Plaintiff's Opposition ("Hoban Decl.").
27  Docket No. 79.

28                                    8

**United States District Court**
For the Northern District of California

1    "parallel discussions" with Toll representatives about Toll's

2    obligation to reconvey the school site, and that explains why they

3    expressed no concerns about the issue during the closing condition

4    dispute.  Reply at 3-4; Inderbitzen Supp. Decl. ¶ 10.  In these

5    parallel discussions, it was representatives of Toll, not Regent,

6    who were working on grading the school site and preparing a map of

7    the school site.  <u>See</u> Inderbitzen Supp. Decl. ¶¶ 7-9.  Toll

8    representatives were also involved in preparing to deed the school

9    parcel over to the Lins.  <u>See</u> <u>id.</u> ¶¶ 10-11.  However, this

10   involvement is consistent with Toll's status as a contractor and

11   agent for Regent after the assignment.  <u>See</u> June 26, 2006 Email.

12        Because of these factual disputes concerning who was obliged

13   to reconvey the school site parcel, the Lins have not shown as a

14   matter of law that the assignment to Regent breached the contract.

15   The Lins' motion for summary judgment on Toll's first, second,

16   third, and fourth causes of action is DENIED.

17        **C.    The PSA and the Subdivision Map Act**

18        The Lins contend that Toll's fifth cause of action fails as a

19   matter of law because the PSA is valid, legal, and enforceable

20   under California's SMA.  Mot. at 16-20.  As outlined above, the

21   PSA gives the buyer the right to waive one or more of the buyer's

22   closing conditions.  <u>See</u> PSA § 5.5(h).  One of the buyer's closing

23   conditions is that "Seller shall have caused the Map (or Maps) to

24   be recorded."  <u>See</u> <u>id.</u> § 5.5(d).  However, in a section of the PSA

25   that is not part of the buyer's closing conditions, it states that

26   "Seller shall, at its sole cost and expense, cause the City to

27   record a parcel map or other map or maps . . . consistent with the

28                                    9

**United States District Court**
For the Northern District of California

1  requirements of the Subdivision Map Act."  See id. § 3.2.  Also,

2  under the special closing conditions for each sub-area, each area

3  has to be conveyed "pursuant to an Approved Map."  PSA §§

4  5.1.2(a), 5.2.2(a), 5.3.2(a).

5      On January 14, 2009, the Court denied Toll's Motion for

6  Judgment on the Pleadings.  See Order.  Docket No. 76.  The Court

7  found that the PSA is ambiguous as to whether the Buyer's ability

8  to waive the Buyer's closing conditions in section 5.5 gives Toll

9  the right to waive the Lins' obligation to cause the City to

10  record a parcel map as required by section 3.2.  Order at 5.

11      In the present Motion, the Lins contend that section 3.2 was

12  a condition for the benefit of both Toll and the Lins and, as

13  such, it could only be waived by the consent of both parties.

14  Mot. at 17.  In support of this contention, the Lins draw

15  attention to an exhibit attached to a memorandum sent by Toll on

16  April 23, 2004, which states that:

17          Each of the parcels or lots within the
            Takedown shall be a lot which can be legally
18          conveyed in compliance with the California
            Subdivision Map Act and the City's Subdivision
19          Ordinance.  This condition shall benefit both
            Buyer and Seller.

20

21  Inderbitzen Decl. Ex. T ("Memo.") at 8 § 2.6.

22      This evidence, by itself, is not sufficient to establish that

23  the parties understood section 3.2 to be a condition for the

24  benefit of both Toll and the Lins.  The relationship between this

25  draft of a general closing condition and the final terms and

26  conditions of the PSA is not clear.  This draft is attached to a

27  document that contemplates the sale of four parcels of land, not

28
                                    10

**United States District Court**
For the Northern District of California

1   three, and it refers to takedown prices that differ from the terms

2   of the PSA.   Unlike this draft, the PSA does not have a section

3   called "General Closing Conditions," but instead divides them up

4   into "Seller's General Closing Conditions," and "Buyer's General

5   Closing Conditions."   See PSA §§ 5.4, 5.5.   Hence, there is still

6   a triable issue of fact as to whether the PSA gives Toll the right

7   to waive the Lins' obligation to cause the City to record a parcel

8   map.   Id. at 4-5.   The Lins' motion for summary judgment on

9   Toll's fifth cause of action is DENIED.

10

11   **V.     CONCLUSION**

12        For the reasons stated above, the Court DENIES Defendants'

13   Motion for Summary Judgment or, in the Alternative, Partial

14   Summary Judgment.

15

16        IT IS SO ORDERED.

17

18        Dated: February 9, 2009

19                                        _____

                                          UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28                                    11