United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOLL BROTHERS, INC., | Case No. 08-987 SC |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES, EXPERT FEES AND COSTS |
| v. | |
| CHANG SU-O LIN; HONG LIEN LIN; HONG YAO LIN, | |
| Defendants. | |
| AND RELATED COUNTER-CLAIMS. | |

**I. INTRODUCTION**

This case concerned the requirements of a Purchase and Sale Agreement ("PSA") entered into between Chang Su-O Lin, Hong Lien Lin, and Hong Yao Lin (the "Lins") and Toll Brothers, Inc. ("Toll"). See Docket No. 216 ("Decision"). Presently before the Court is the Lins' Motion for Attorneys' Fees, Expert Fees, and Costs. Docket No. 218 ("Motion"). The Lins also submitted a Bill of Costs. Docket No. 220. Toll filed an Opposition, and the Lins submitted a Reply. Docket Nos. 221, 222. For the reasons stated herein, the Motion is GRANTED IN PART and DENIED IN PART.

**II. BACKGROUND**

Following trial, the Court concluded that the Lins did not breach the PSA, and that Toll breached the PSA by failing to close on Sub-Area 3 and by terminating the PSA on December 7, 2007.

Decision at 44. Under the liquidated damages provision of the PSA, the Lins were entitled to retain the deposit in the amount of $7,735,000. Id. The Court determined that the Lins were the prevailing party, and were entitled to recover their attorneys' fees and costs. Id.

The Purchase and Sale Agreement contains an attorneys' fees provision:

> If any legal action or other proceeding is commenced to enforce or interpret any provision of, or otherwise relating to, this Agreement, the losing party shall pay the prevailing party's actual expenses incurred in the investigation of any claim leading to the proceeding, preparation for and participation in the proceeding, any appeal or other post judgment motion, and any action to enforce or collect the judgment including contempt, garnishment, levy, discovery and bankruptcy. For this purpose, "expenses" include, without limitation, court or other proceeding costs and experts' and attorneys' fees and their expenses. The phrase "prevailing party" shall mean the party who is determined in the proceeding to have prevailed or who prevails by dismissal, default or otherwise.

Second Am. Compl., Docket No. 39, Ex. A ("PSA") § 18.1. Based on this provision in the contract, the Lins initially contended they were entitled to recover attorneys' fees totaling $1,381,493.00, expert fees totaling $111,886.00, statutory costs totaling $78,099.00, and additional expenses totaling $4221.00. Mot. at 2. The Lins seek an additional $35,282.50 for fees incurred preparing the Motion, the Bill of Costs, the Reply and other post-trial work, and an additional $2379.10 in costs. Docket No. 224 ("Beers Decl. in Supp. of the Lins' Reply"). This adds up to a request for $1,416,775.50 for attorneys' fees, and $196,585.10 for costs.

2

## III. LEGAL STANDARD

The American rule, under which each party to a lawsuit must ordinarily pay his or her own attorneys' fees, does not apply where the parties have agreed to allocate attorneys' fees by contract. Gilbert v. Master Washer & Stamping Co., Inc., 87 Cal. App. 4th 212, 216-17 (Ct. App. 2001). Such agreements are governed by California Civil Code section 1717(a), which provides that:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . to the prevailing party, then . . . the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs. . . . Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

Cal. Civ. Code § 1717(a).

The trial court has broad authority to determine the amount of a reasonable fee. PLCM Group v. Drexler, 22 Cal. 4th 1084, 1095 (2000). The fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. Id. The reasonable hourly rate is that prevailing in the community for similar work. Id. The lodestar figure may be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. Id. The factors to be considered include the nature and difficulty of the litigation, the amount involved, the skill required and employed to handle the case, the attention given, the success or

3

failure, and other circumstances in the case. <u>EnPalm, LCC v. Teitler Family Trust</u>, 162 Cal. App. 4th 770, 774 (Ct. App. 2008).

**IV. DISCUSSION**

    **A. Requested Attorneys' Fees**

The Lins' trial team included Steve McNichols ("McNichols"), Everitt Beers ("Beers"), David Austin ("Austin"), Randy Sullivan ("Sullivan"), Margaret Allen, and Susan Handelman ("Handelman"). Beers Decl. ¶ 3.[1] McNichols was the Lins' lead counsel and his hourly rate is $395. <u>Id.</u> ¶¶ 4-5. McNichols has been practicing civil litigation in the San Francisco Bay Area since 1974, and he has tried over 150 jury trials and court trials to verdict. <u>Id.</u> ¶ 5. McNichols supervised all aspects of the litigation, and during trial, he handled the direct examination and cross-examination of most of the non-expert witnesses. <u>Id.</u> ¶ 4. The invoices show that McNichols spent 1163.6 hours working on this case. <u>See id.</u> Ex. A ("Monthly Invoices"). The Lins were therefore billed $459,622 for McNichols' work on this case.

Beers was the Lins' second chair and his hourly billing rate is $350. <u>Id.</u> ¶¶ 6-7. Beers has been practicing civil litigation in California since 1980. <u>Id.</u> ¶ 7. In addition to working on motions in this case, Beers was engaged in the retention, preparation and trial examination of the Lins' five expert witnesses. <u>Id.</u> ¶ 6. He examined all expert witnesses called at trial by both parties. <u>Id.</u> The invoices show that Beers spent

---

[1] Everitt Beers, a partner at McNichols Beers LLP, filed a declaration in support of the Motion. Docket No. 219.

4

1  995.18 hours working on this case.  <u>See</u> Monthly Invoices.
2  Therefore, the Lins should have been billed $348,313 for Beers'
3  work.[2]

4  Austin is a senior associate at McNichols Beers LLP and his
5  hourly rate is $250.  Beers Decl. ¶ 9.  He has been practicing law
6  since 2001, and has tried several cases to judgment or verdict.
7  <u>Id.</u>  He was primarily responsible for researching and drafting
8  Defendants' Motion for Summary Judgment and opposing Plaintiff's
9  Motion for Judgment on the Pleadings.  <u>Id.</u> ¶ 8.  The invoices show
10 that Austin spent 518.8 hours working on this case, for which the
11 Lins were billed $129,700.  <u>See</u> Monthly Invoices.

12 Sullivan is an associate at McNichols Beers LLP and his
13 hourly rate is $225.  Beers Decl. ¶ 12.  He has been practicing
14 law since 2003.  <u>Id.</u>  He was involved in the discovery phase of
15 this litigation, took two depositions, and briefly examined two
16 witnesses during trial.  <u>Id.</u> ¶ 10.  The invoices show that
17 Sullivan spent 789.7 hours on the case, for which the Lins were
18 billed $177,682.50.  <u>See</u> Monthly Invoices.

19 Allen is a contract attorney and her hourly rate on this
20 matter was $175.  Beers Decl. ¶¶ 13-14.  She received her law
21 degree in 1984.  <u>Id.</u> ¶ 14.  Allen researched motions and reviewed
22 documents and deposition transcripts.  <u>Id.</u> ¶ 13.  The invoices
23 show that Allen spent 239.2 hours working on this case, and the
24 Lins were billed $41,860.  <u>See</u> Monthly Invoices.

25 Susan Handelman is a partner with the law firm Ropers,

---

[2] The Invoice shows a total of $348,314.17.

5

1  Majeski, Kohn & Bentley, and her hourly rate is $350. Beers Decl.
2  ¶ 15. She is certified as an appellate specialist by the State
3  Bar of California. Id. Handelman was consulted regarding
4  potential appellate issues. Id. The Lins allege that Handelman
5  incurred fees in the amount of $3885.00, but the only evidence
6  presented shows that the Lins were charged $1750.00 for
7  Handelman's services. See Decl. of Beers in Supp. of the Lins'
8  Reply. The Court will only include Handelman's fee of $1750.00 in
9  its calculation of reasonable attorneys' fees.

10  The Lins' team also included paralegals Lori Mikkelson,
11  Jennifer DeCoite, Katherine Dayton, and Nicholas Settlemeyer.
12  Submitted invoices show that Mikkelson worked on the case for
13  374.7 hours at a rate of $100 per hour, which totals $37,470. See
14  Monthly Invoices. DeCoite worked on the case for 938.9 hours at a
15  rate of $100 per hour, which totals $93,890. See id. Dayton
16  worked on the case for 741 hours at a rate of $100 per hour, which
17  totals $74,100. See id. Settlemeyer worked on the case for 297.1
18  hours at a rate of $50 per hour, which totals $14,855. See id.

19  **B.   Toll's Opposition to Requested Attorneys' Fees**

20  Toll presents a number of challenges to the Lins' request for
21  attorneys' fees. Opp'n at 3-7. First, Toll contends the Lins
22  cannot recover fees incurred on claims that they voluntarily
23  dismissed at trial. Id. at 4-5. Second, Toll contends the Lins
24  should not recover fees incurred prior to the filing of the
25  lawsuit. Id. at 5. Third, Toll contends the Lins should not
26  recover attorneys' fees incurred on unnecessary motions. Id. at
27  5-6. Fourth, Toll contends the Lins' attorneys' fees should be

6

1 reduced under the billing judgment rule. Id. at 6-7. The Court
2 addresses each challenge in turn.

3 During trial, the Lins moved to dismiss their fourth, fifth,
4 and sixth counterclaims. See Docket No. 187 ("Motion to
5 Dismiss"). These counterclaims related to Toll's assignment of
6 Sub-Area 2 to Regent Land Investment LLC ("Regent"). Mot. to
7 Dismiss at 3. The Court granted the Motion to Dismiss. See
8 Docket No. 192. Toll contends that the Lins cannot recover
9 attorneys' fees for work performed on these claims that were
10 voluntarily dismissed. In support of this contention, Toll relies
11 on Glencoe v. Neue Sentimental Film AG, 168 Cal. App. 4th 874 (Ct.
12 App. 2008).

13 That case, however, does not support Toll's position. In
14 Glencoe, the court held that when the plaintiff dismissed the
15 entire action with prejudice after the start of trial, the
16 defendant could not be considered the prevailing party and
17 therefore was not entitled to attorneys' fees. 168 Cal. App. 4th
18 at 877-78. Here, the Lins are the prevailing party because the
19 Court found that the Lins did not breach the PSA, and that Toll
20 breached the PSA by failing to close on Sub-Area 3 and by
21 terminating the PSA on December 7, 2007. See Decision at 44. The
22 Court found that the Lins were entitled to keep the deposit of
23 $7,735,000 relating to Sub-Area 3. Id. Glencoe does not support
24 reducing the attorneys' fee award. However, as the Court explains
25 below, the fact that the Lins' attorneys spent a considerable
26 amount of time on unsuccessful arguments does warrant reducing the
27 lodestar figure in this case.

28

Second, Toll contends the Lins should not recover fees incurred prior to the filing of the lawsuit. As Toll notes, this action was filed on February 19, 2008. See Docket No. 1 ("Compl."). According to Toll, the Lins seek the recovery of $53,574 based on 144 hours of attorney time spent between October 17, 2007 and February 19, 2008, but the Lins offer no explanation for why these pre-suit fees were necessary or reasonable. Opp'n at 5.

Toll cites no authority showing that the Lins cannot recover pre-litigation fees. The PSA expressly provides that the losing party shall pay the prevailing party's expenses incurred investigating and preparing for the proceeding. PSA § 18.1. Based on the evidence presented at trial, the Court notes that the parties must have realized as early as April 13, 2007, that their dispute might result in litigation. On that date, Toll's attorney, Warren Inouye, sent the Lins a letter putting the Lins on notice of a possible default under the PSA. Ex. P-108. On June 27, 2007, Toll sent the Lins a letter that was intended "to serve as notice of Seller's default under the Agreement." Ex. P-139. Certainly after escrow failed to close on Sub-Area 3 on June 30, 2007, as scheduled, it would have been reasonable for the Lins to begin investigating and preparing for litigation. The billing invoices show that attorneys from McNichols Beers LLP started working on the case on October 17, 2007. See Monthly Invoices. Much of their early work was focused on trying to resolve the dispute via mediation. See id. The Court finds that the Lins are entitled to an award of attorneys' fees for work performed

8

investigating and preparing for the proceeding that commenced on February 19, 2008.

Third, Toll contends the Lins should not recover attorneys' fees incurred on unnecessary motions. Toll argues that the Lins' motion for summary judgment and their motion for judgment on partial findings at trial were completely unnecessary. Opp'n at 5-6. The Court disagrees. It was not improper to file these motions, and the arguments presented were not frivolous. See Mot. for Summary Judgment; Docket No. 197 ("Motion for Judgment on Partial Findings."). Toll cites to no authority suggesting that attorneys' fees should not be awarded merely because a motion is denied.

### C. Determining Reasonable Attorneys' Fees

Finally, Toll contends that the billing judgment rule requires reducing the Lins' attorneys' fees. Opp'n at 6. The Supreme Court has emphasized that a fee applicant should "exercise 'billing judgment' with respect to hours worked." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." Id. at 434. Toll argues that the Lins' attorneys did not exercise billing judgment because (1) Mr. Beers spent at least thirty hours on legal research regarding the Black Hills case, which was also researched by other attorneys at his firm, (2) individual attorneys billed in excess of eight hours per day on sixty-five occasions, not including the time spent in trial, and (3) there were numerous, apparently redundant, meetings

9

among attorneys, experts, and witnesses. Opp'n at 6.

The Court agrees that the Lins request for attorneys' fees of $1,416,775.50 is excessive. The lodestar figure is based on the number of hours reasonably expended multiplied by the reasonable hourly rate. PLCM, 22 Cal.4th at 1095 (2000). When arriving at a lodestar figure, the Court must determine "the reasonable, not actual, number of hours expended by counsel for the prevailing party." EnPalm, 162 Cal. App. 4th at 774 n.4. The Court has reviewed the billing records submitted by the Lins, and, for the most part, the Court finds that they are reasonable. For example, while Toll complains that the Lins' attorneys often billed more than eight hours a day, a review of the invoices show that these long days were always warranted, and they often occurred prior to major filing deadlines in the case, such as in December 2008. See Monthly Invoices.

However, there are several exceptions. First, the Court finds that it was not reasonable for Beers -- who has a high billing rate of $350 per hour -- to spend over thirty hours researching the Black Hills issue. The Court notes, for example, that on November 18, 2008, Beers spend 8.2 hours on the issue. See Monthly Invoices. This work could have been performed by attorneys with lower billing rates, and indeed, other attorneys at the firm were also researching the same issue. See id. The Court finds that it would have been reasonable for Beers to spend no more that ten hours on the issue, and reduces the lodestar figure accordingly.

Second, the Lins' request $35,282.50 in attorneys' fees for

post-trial work on this Motion, the Bill of Costs, and their Reply. Decl. of Beers in Supp. of the Lins' Reply. While fees and costs associated with pursuit of a motion for attorneys' fees are recoverable, <u>Doran v. Corte Madera Inn Best Western</u>, 360 F. Supp. 2d 1057, 1062 (N.D. Cal. 2005), the Court finds the Lins' request to be excessive. The Lins' attorneys spent over 100 hours on this work, with the vast majority of the work being performed by McNichols and Beers, the two attorneys at the firm with the highest billing rates. <u>See</u> Decl. of Beers in Supp. of the Lins' Reply. Much of this work could have been performed by attorneys with lower billing rates, or by paralegals, and therefore the Court reduces the request for $35,282.50 by fifty percent.

The Court therefore sets the lodestar figure at $1,389,883.75. This figure is based on a finding that it was reasonable for the Lins' attorneys to bill $1,169,568.75,[3] and it was reasonable for the Lins' paralegals to bill $220,315.00.[4]

Next, the Court must determine whether the lodestar figure should be reduced based on factors including the nature and difficulty of the litigation, the amount involved, the skill

---

[3] McNichols billed $459,622.00; Beers should have billed $341,313.00 (975.18 hours at $350 per hour); Austin billed $129,700.00; Sullivan billed $177,682.50; and Allen billed $41,860.00. <u>See</u> Monthly Invoices. Handelman billed $1750.00. <u>See</u> Decl. of Beers in Supp. of the Lins' Reply. This figure also includes an award of $17,641.25 for the post-trial request of fees.

[4] Mikkelson billed $37,470.00; DoCoite billed $93,890.00; Dayton billed $74,100.00; and Settlemeyer billed $14,855.00. <u>See</u> Monthly Invoices. Many statutory provisions in California have been interpreted to include paralegal fees in attorneys' fees. <u>See</u>, e.g., <u>Guinn v. Dotsun</u>, 23 Cal. App. 4th 262, 268-70 (Ct. App. 1994). Toll does not dispute that paralegal fees can be included in the Lins' attorneys' fees award.

11

1  required and employed to handle the case, the attention given, the
2  success or failure, and other circumstances in the case. EnPalm,
3  162 Cal. App. 4th at 774. The Court begins by noting that this
4  was a case of considerable size, length, and complexity, where
5  $7,735,000 was at stake. A review of the Lins' invoices reveals
6  that discovery in this case was extensive. The Lins' attorneys
7  were required to review documents from many sources, including the
8  city of Dublin, Pacific Gas & Electric, Regent, Robert Gray &
9  Associates, and McKay & Somps. See Monthly Invoices. Nineteen
10 depositions were taken, and both sides retained numerous expert
11 witnesses. See id. The trial lasted ten court days, and involved
12 approximately 900 exhibits.

13    Success is one of the factors that the Court can take into
14 account when determining if the lodestar figure should be reduced.
15 See EnPalm, 162 Cal. App. 4th at 774; see also Clejan v. Reisman,
16 5 Cal. App. 3d 224, 241 (Ct. App. 1970) (listing "the success of
17 the attorney's efforts" as factor in determining reasonable
18 attorneys' fee). Here, some of the Lins' key legal arguments were
19 not successful. The Lins spent a significant amount of time, both
20 pre-trial and during trial, trying to convince the Court that Toll
21 failed to perform a condition precedent by failing to transfer the
22 school site to the Lins. See, e.g., Mot. for Summary Judgment;
23 Docket No. 150 ("Defs.' Trial Br."). The Court concluded that
24 Toll's failure to reconvey the school site was not a failure to
25 perform a condition precedent. Decision at 41. While the Lins
26 were the prevailing party in this case, they prevailed due to
27 considerations not explicitly presented by their attorneys. The

12

1  Court found that the failure to reconvey the school site permitted
2  the Lins to extend the date for the close of escrow on Sub-Area 3,
3  which meant that the Lins were not in breach of the PSA on the
4  scheduled closing date, and Toll breached the PSA by terminating
5  the contract on December 7, 2007.  Id. at 33-34, 41-42.  Also, the
6  Court concluded that Toll did not breach the covenant of good
7  faith and fair dealing.  Id. at 42-43.  Because the Lins failed to
8  persuade the Court concerning some of their key arguments, the
9  Court exercises its discretion to reduce the lodestar figure by
10 twenty percent.  See EnPalm, 162 Cal. App. 4th at 773-78
11 (affirming trial court's reduction of lodestar figure by ninety
12 percent based on circumstances of the case).  The Court awards the
13 Lins attorneys' fees in the amount of $1,111,907.00.

####    D.    **Expert Fees Not Recoverable**

15      The Lins contend they are entitled to an award of their
16 expert fees because the PSA expressly provides for expert fees in
17 its definition of recoverable expenses.  Mot. at 11; PSA § 18.1.
18 The Lins' expert fees are $111,886.50.  See Bill of Costs Ex. A
19 ("Itemization in Support of Bill of Costs") at 5.  However, the
20 law is clear that "assuming expert witness fees may be recovered
21 under a contractual provision, they must be specially pleaded and
22 proven at trial rather than included in a memorandum of costs."
23 Ripley v. Pappadopoulos, 23 Cal. App. 4th 1616, 1627 (Ct. App.
24 1994); see also Carwash of America-PO LLC v. Windswept Ventures
25 No. I, LLC, 97 Cal. App. 4th 540, 544 (Ct. App. 2002) ("[E]ven
26 where expert witness fees are expressly allowed by contract, this
27 does not mean such fees may be recovered as an item of costs.");

Eastwood v. Nat'l Enquirer, Inc., 123 F.3d 1249, 1257 (9th Cir. 1997)(expert witness fees not recoverable costs). Arntz Contracting Co. v. St. Paul Fire & Marine Insurance Co. does not support an award of expert fees because, in that case, the court was focused on "the situation of a broad contractual cost provision where litigation expenses are specially pleaded and proven at trial." 47 Cal. App. 4th 464, 491 (Ct. App. 1996). The Lins did not specially plead and prove their expert fees at trial, and so they are not entitled to include expert fees in their costs.

The Lins' reliance on Bussey v. Affleck, 225 Cal. App. 3d 1162 (Ct. App. 1990), and Beasley v. Wells Fargo Bank, 235 Cal. App. 3d 1407 (Ct. App. 1991), is misplaced. In Beasley, the court relied on Bussey, and held that, under section 1021.5 of the California Code of Civil Procedure, a party can recover expert witness fees when the litigation results in a public benefit. 235 Cal. App. 3d at 1421-22. Here, the litigation did not benefit the public. In Bussey, the court included expert fees in an award of attorneys' fees, but that decision has been repeatedly rejected by subsequent decisions. See, e.g., Benson v. Kwikset Corp., 152 Cal. App. 4th 1254, 1280-81 (Ct. App. 2007) (noting that every subsequent published decision has rejected Bussey's approach). The Court concludes that the Lins are not entitled to an award of expert fees as part of their costs, and therefore the Court reduces the Lins' award for costs by $111,886.50.

**E. Other Costs**

In addition to attorneys' fees and expert fees, the Lins seek

14

recovery of all their other litigation costs under the statutory authority of 28 U.S.C. § 1920, Civil Local Rule 54-3, and the express terms of the PSA. Mot. at 12. The Lins' submitted a Bill of Costs. Docket No. 220.

This Court may tax "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). The Lins' copying costs total $44,717.57. See Itemization in Supp. of Bill of Costs at 3. Toll objects to the Lins' request for copying expenses on the basis that the Lins make no distinction between in-house photocopying expenses, expenses for copies tendered to the Court, or provided to opposing counsel. Opp'n at 9. Toll contends that the Lins are not entitled to an award of any copying costs. Id.

In some instances, the Court can determine that the Lins' copies were necessarily obtained for use in the case, but in many instances, the Court is unable to do so. See Itemization in Supp. of Bill of Costs. For example, there is no description of the fax, copy, and print charges for the month of December 2008, which totaled $4,140.75. Id. at 2. Based on the Court's inability to determine if many of these copying costs were necessary, the Court reduces the Lins' award for copying costs by fifty percent. Accord Montgomery County v. Microvote Corp., No. 97-6331, 2004 WL 1087196, at *8 (E.D. Pa. May 13, 2004) (reducing copying costs by fifty percent where court unable to evaluate necessity of costs). The Court reduces the Lins' copying costs to $22,358.79.

While the PSA contains a broad expense recovery provision, the Court finds that the Lins cannot recover costs that exceed

15

those provided for under 28 U.S.C. § 1920.  The Lins seek to recover $1,765.75 for courier and overnight delivery charges, and $83.49 for postage charges.  See Itemization in Supp. of Bill of Costs at 4, 6.  These costs are not recoverable under the statute.  See United States v. Shasta Servs., Inc., No. 04-1955, 2007 U.S. Dist. LEXIS 40590, at *2 (E.D. Cal. May 22, 2007) ("Neither mail nor courier fees can properly be taxed."); Justin Kraft & Kraft Piano Servs., LLC v. Arden, No. 07-487, 2009 U.S. Dist. LEXIS 1527, at *25 (D. Or. Jan. 8, 2009) ("Costs for courier, mail, telephone, and fax charges are outside the scope of § 1920.").

The Lins seek to recover $425.58 for their mediator fee. Itemization in Supp. of Bill of Costs at 6.  This cost is not recoverable.  See McAfee v. Metro. Life Ins. Co., No. 05-0227, 2008 U.S. Dist. LEXIS 100765, at *52 (E.D. Cal. Dec. 11, 2008). The Lins seek to recover $669.98 for online research.  Itemization in Supp. of Bill of Costs at 6.  This cost is not recoverable. Tasakos v. Welliver Mental Prods. Corp., No. 04-6205, 2005 U.S. Dist. LEXIS 4654, at *5 (D. Or. Mar. 16, 2005).  The Lins seek to recover $851.62 for travel expenses.  Beers Decl. in Supp. of Bill of Costs ¶ 13.[5]  Travel costs are not recoverable.  McAfee, 2008 U.S. Dist. LEXIS 100765 at *52.

Finally, Toll objects to the Lins' request for $181.25 for transcription services.  Opp'n at 10.  These transcription

---

[5] The Bill of Costs includes a declaration by Everitt Beers. See Docket No. 220.  There is a discrepancy between this declaration, and the itemized list, which seeks $1,095.91 for travel expenses.  See Itemization in Supp. of Bill of Costs at 6. The discrepancy has no impact on the Court's calculations because the Court does not award travel expenses.

16

services were for interrogatories, a rough draft letter, and Defendants' closing brief. See Itemization in Supp. of Bill of Costs at 6. While the Court may tax as costs the fees for necessary transcripts, see 28 U.S.C. § 1920(2), the Court is not convinced that these transcription services were necessary. The Court will reduce the Lins' cost award accordingly. Costs are taxed in favor of the Lins in the sum of $56,460.46.[6]

## V. CONCLUSION

For the reasons stated above, the Court AWARDS the Lins $1,111,907.00 in attorneys' fees, and $56,460.46 in costs.

IT IS SO ORDERED.

Dated: June 25, 2009

UNITED STATES DISTRICT JUDGE

---

[6] The cost award is based on $22,358.79 for copying costs, $15,121.46 for deposition transcripts, $1131.31 for trial exhibits, $2223.00 for service of process, $13,505.80 for trial transcripts, and $2120.10 for witness fees. See Bill of Costs. The Court is not persuaded that the Lins are entitled to their post-trial costs. Mail and courier costs are not recoverable, and the Court cannot determine if the copying charges were necessary. See Beers Decl. in Supp. of the Lins' Reply.

17